**ANDERSON et al. v. ARVEY CORPORATION.**

Civ. A. No. 4571.

United States District Court
E. D. Michigan, S. D.

April 20, 1949.

Walter M. Nelson, of Detroit, Mich., for plaintiffs.

Wilber M. Brucker, Robert C. Winter, Clark, Klein, Brucker & Waples, Stanley H. Fulton and Kellogg, Fulton & Donovan, all of Detroit, Mich., for defendant.

LEVIN, District Judge.

Forty-two supervisory employees of the defendant corporation bring this action for overtime compensation, liquidated damages and attorney's fees, under Sections 6, 7 and 16(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. §§ 201–219. The periods of such claims are from January 23, 1939, to January 23, 1945.

The defendant maintains:

1. That certain of the plaintiffs, during a particular period in their employment, were not engaged in interstate commerce or in the production of goods for commerce.

2. That the employees are exempt as bona fide executives within the meaning of the Wage and Hour Division Regulations, Section 541.1, 29 FR 541.1[1], App. 29 U.S.C.A.Rules and Regulations.

---

[1] "Sec. 541.1 Executive. The term 'employee employed in a bona fide executive * * * capacity' in Section 13(a)(1) of the act shall mean any employee—

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions

3. Defendant's omission to pay overtime was in good faith in reliance on "regulation, order, ruling, approval, or interpretation" under the Fair Labor Standards Act, and within the meaning of Section 9 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 258, and that such good faith is, therefore, a bar to this action.

4. That in any event it had reasonable grounds for believing that it was not classifying its employees in violation of the Fair Labor Standards Act, and if this action be not barred by Section 9 of the Portal-to-Portal Act of 1947, and if overtime be due the plaintiffs, that it be saved from the payment of liquidated damages, as permitted by Section 11 of that Act, 29 U.S.C.A. §§ 258, 260.

Ten of the above-named plaintiffs having stated in open court that they desired to withdraw from the suit, an order permitting such withdrawal was entered. Counsel for these plaintiffs, who is also counsel for the remaining plaintiffs, objected to the dismissal upon the ground firstly, that once having joined with other employees, they could not dismiss their action without the consent of their coplaintiffs, and secondly, that since such plaintiffs remain in the employment of the defendant, the court must assume that they were subjected to pressures compelling them to recede from a position adverse to their employer.

█ This is not a true class action and any one of the plaintiffs might have sued individually without requiring his fellow employees to join with him. They may or may not have been faced with common questions of fact and law in the presentation of their respective claims. Pentland et al. v. Dravo Corp., 3 Cir., 152 F.2d 851.

█ Upon objection being voiced upon the second ground, the court took a recess in the proceedings and in accordance with the suggestion of the court, the withdrawing plaintiffs and their counsel conferred in privacy. After more than an hour, the court was advised by counsel that the conference was terminated and the court interrogated the employees. Each reiterated his desire to withdraw from the litigation. The court is satisfied that these withdrawals were voluntary acts of such plaintiffs, and that there was no undue influence exerted upon any one of them by any person with respect to any aspect of this suit. The court accordingly reaffirms its order of dismissal as to these ten plaintiffs.

In furtherance of convenience and as permitted under Rule 42 of the Federal Rules of Civil Procedure, 28 U.S.C.A., a separate trial was had with respect to the claims of the following eight plaintiffs, and the action with respect to the remaining plaintiffs was adjourned: Fred C. Stevens, Bernard Wilczynski, Arthur A. Anderson, Thomas Hall, Alger Thomas, Arthur Block, Stephen J. Olejniczak and Thomas Mannaioni. After the commencement of the suit, plaintiffs Thomas and Block died, and their respective personal representatives were substituted in their places as plaintiffs.

The defendant, Arvey Corporation, is an Illinois corporation having a plant in Detroit, Michigan, where prior to World War II it employed at its peak production approximately 680 persons. Its peacetime or regular business was the production of automobile parts consisting of glove box compartments, dashboard liners, door panels, arm rests and similar items. The manufacturing of these parts for the trim and finish of passenger and truck vehicles was done in part by hand but largely by the use of power driven machinery including die

---

and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging or other facilities), and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

presses, wire stitchers, riveting tools and other devices. Defendant supplied its products to principal manufacturers of automobiles.

As war became imminent, defendant's regular business of manufacturing automobile parts began to taper off. By the end of 1941 such production, although it did not cease entirely, constituted a minor part of its business. In October 1942, the defendant obtained a cost-plus-fixed fee contract to assemble prefabricated aluminum parts into floor sections for Army C-46 transport planes as a sub-contractor for Woodall Industries, Inc., who had a contract with Curtiss-Wright Corporation, prime contractor for the Army Air Force. These floor sections were shipped from defendant's plant to Curtiss-Wright Corporation at Buffalo. While producing aircraft parts defendant employed from 300 to 700 employees on the day shift and from 200 to 380 on the night shift. Preparation by way of training and the procuring of equipment for the assembling of the floor sections commenced in October 1942, and was gradually accelerated to the point of full operation and production about April 1, 1943.

██ It is admitted by defendant that in its peacetime business of manufacturing automobile parts and in the manufacturing of aircraft parts it was engaged in producing goods for interstate commerce and that while plaintiffs were working on such parts they were engaged in producing goods for commerce. During the transition period, from peacetime to wartime production, October 1941 to April 1943, the defendant did not discharge those plaintiffs who were subsequently transferred to aircraft production but continued them on the payroll as supervisors and foremen. The defendant denies that during this transition period the plaintiffs were engaged in interstate commerce or in the production of goods for commerce. The testimony shows that although the production of parts for the interior of motor vehicles slackened to a considerable degree, it did not cease entirely, and that during this period the defendant also manufactured some army truck cab tops and other items. Although the burden of showing during what period he was engaged in interstate commerce or in the production of goods for commerce is on the employee in a suit under the Act to recover minimum wages and overtime compensation, it is not incumbent upon him that he show the amount or volume of the goods moved, or intended by the employer in the normal course of his business at the time of production to be moved, in interstate commerce. United States v. Darby, 312 U.S. 100, 118, 123, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. I am satisfied that during such transition period, the defendant was subject to the provisions of the Fair Labor Standards Act with respect to these plaintiffs.

Of the plaintiffs with whom we are here concerned, the employment of Hall, Thomas and Block was exclusively with the Automotive Division; Stevens, Wilczynski and Anderson were employed in both the Automotive and Aircraft Divisions; Olejniczak and Mannaioni were employed only in Aircraft. The discussion which follows will be related to the lettered subdivisions of the Regulations set forth in the margin defining exempt executive employees. Since I have come to the conclusion that all the employees who worked in the Aircraft Division are exempt as executive employees during the term of their employment in such division, I shall first discuss that department.

### Aircraft Division

(a) In the manufacture of aircraft parts, the defendant had for a considerable period of time prior to the commencement of this suit established at its plant various production departments or subdivisions thereof which had been regularly and customarily recognized as such and each of which departments or subdivisions performed a separate and distinct function. I am satisfied that the following plaintiffs, all of whom were members of the foremen's union, were, for the periods set out, supervisors and directors of groups of workmen in various departments, and had as their primary duty the management of such particular departments.

| | |
|---|---|
| Fred C. Stevens | Transportation Supervisor, Central Planning Division from December 15, 1942, until after January 23, 1945. |
| Bernard Wilczynski | Foreman Production Department, December 7, 1942, to May 3, 1943. Group Leader, Production Department, May 3, 1943, until After January 23, 1945. |
| Arthur Anderson | Foreman or Group Leader, Production Department from November 18, 1942, to May 3, 1943. |
| Stephen J. Olejniczak | Group Leader, Production Department October 12, 1943, until after January 23, 1945. |
| Thomas Mannaioni | Group Leader Production, July 23, 1944 to October 29, 1944. Material Supervisor, Central Planning Division, October 29, 1944, until after January 23, 1945. |

(b) The work required trained, experienced men and when defendant obtained its aircraft contract, plaintiffs Anderson and Wilczynski were among those given special training in aircraft assembly work at a school conducted in defendant's plant and also at the Curtiss-Wright plant at Buffalo, New York. Upon their return they instructed the other supervisors as well as some groups of workmen. Although the defendant's plant had a general foreman or plant superintendent, the defendant followed the practice recognized generally in the operation of large industrial plants of placing the responsibility for directing the work of other employees upon persons designated to do so. I find that all of the plaintiffs in the Aircraft Division regularly and customarily directed the work of other employees in their respective departments or subdivisions.

(c) It is a matter of common knowledge that the actual hiring and firing in large plants is done by the Employment or Personnel Manager but it is not expected that he be aware of qualifications of individual employees. Because the foreman or supervisor in charge of a department group is most familiar with the work of the employees under his supervision, his recommendations are usually adopted. This was the practice followed in the plant of the defendant. The suggestions and recommendations of the plaintiffs as to hiring or firing and as to advancement or change of status were given particular weight.

(d) There is little or no doubt in the mind of the court that in the execution of their duties, the plaintiffs in the aircraft department customarily and regularly exercised discretionary powers. The work in each of the departments required careful supervision. The group leaders, Wilczynski, Anderson, Olejniczak and Mannaioni were required to and did exercise constant supervision over the work and the supply of parts and materials on hand. They determined whether additional workers were necessary, whether the required tools and equipment were being properly used, whether the work was being satisfactorily performed and generally checked the flow of work and its quality in their respective divisions. Mannaioni's position in Aircraft after October 29, 1944, was changed from Group Leader to Material Supervisor of the Central Planning Department. In this position, he was in charge of defendant's stock crib on the night shift and responsible for the supervision of moving, storing and distributing production material. With respect to Stevens, who acted as transportation supervisor in the Central Planning Depart-

ment, he was in charge of the receiving and shipping of all aircraft material with thirty-two employees under his direction. The department occupied a large area as all incoming prefabricated airplane parts were received here from Woodall Industries. The shipment of the aircraft material was a complicated operation and required careful handling. Stevens exercised discretion in determining shipping schedules, the number of trucks required for a shipment, the assignment of employees to different operations and generally in the performance of his other duties.

(e) The court finds that at all times during the relevant period, the plaintiffs actually received salary in excess of the weekly minimum required by the Regulations. The employees in the Aircraft Division were on a separate payroll from that of the Automotive Department, and were paid an hourly rate with a guarantee of not less than $200.00 per month. This procedure of the defendant in this respect was approved by the Administrator of the Wage and Hour Division. I shall refer to and discuss this approval later under the heading Automotive Division.

(f) It is clear that the time of these plaintiffs was taken up with the instruction of employees working under them and general supervisory duties. These plaintiffs were not required to do the actual labor of the men working under them except on occasions when it was necessary to instruct the workers or demonstrate how the work should be done. The manager of the day shift testified that both the superintendent and director of aircraft advised the group leaders that they were not to work. It is difficult to see how they could have performed the necessary supervisory duties and still have engaged in manual labor. The general employees' union exercised strict vigilance to see that none of these plaintiffs performed manual labor. None of the plaintiffs in the Aircraft Division devoted more than twenty percent of his worktime doing work of the same nature as that performed by the nonexempt employees working under him.

■ As stated at the outset of this discussion, the court finds that all of the foregoing plaintiffs in the Aircraft Division were properly classified as exempt ecutives within the meaning of the Regulation and are not entitled to overtime compensation during the period in question for work performed in the Aircraft Division. Compare: Marian et al. v. Lockheed Aircraft Corp. D.C., 65 F.Supp. 18; Hoff et al. v. North American Aviation, Inc., D.C., 67 F.Supp. 375; Brown et al. v. Consolidated Vultee Aircraft Corporation, D.C., 80 F.Supp. 257.

## Automotive Division

(a) In the manufacture of automotive parts, the court finds that the defendant had regularly established departments or subdivisions, and that each of the following plaintiffs was a department foreman or assistant foreman, and had as his primary duty the management of his particular department or subdivision.

| | |
|---|---|
| Fred C. Stevens | Foreman Shipping Department from prior to January 23, 1939, to December 15, 1942. |
| Bernard Wilczynski | Foreman from prior to January 23, 1939, until December 7, 1942, simultaneously in charge of: <br> 1. Arm Rest Metal Reinforcement Department <br> 2. Arm Rest Shipping Department <br> 3. Glove Box Assembly Department |
| Arthur Anderson | Foreman from prior to January 23, 1939, until November 18, 1942, in charge of Sample Department. |

| | |
|---|---|
| Thomas Hall | Foreman Forming Department, October 24, 1940, to January 20, 1941. |
| | Assistant Foreman in Mounting Department in charge of a subdivision thereof, being the Riser Department, from January 20, 1941 to May 3, 1943. |
| | Assistant Foreman, Special Assignment, Maintenance Department, May 3, 1943, until after January 23, 1945. |
| Alger Thomas (dec'd) | Foreman of Rule-Die Making Department from prior to January 23, 1939 until after January 23, 1945. |
| Arthur Block (dec'd) | In charge of Pasting Department from prior to January 23, 1939, until after January 23, 1945. Title either Foreman or Assistant Foreman. |

(b) (c) (d) The court finds that the requirements of these subdivisions of the Regulation have been satisfied. These plaintiffs all customarily and regularly directed the work of other employees working under them. Each of these plaintiffs had the authority to reject a new employee after he had been approved by the Personnel Department and the suggestions of these plaintiffs was given particular weight as to matters of promotion, advancement or any change of status. In the execution of their duties, they all were required to and did exercise discretionary powers in the operation and management of their respective departments or subdivisions. They were required to and did determine whether the materials furnished were proper for the job required, whether the operations were being satisfactorily performed, whether additional help was required, whether delivery schedules were being met and to make numerous other decisions from time to time as the necessity for doing so arose.

(e) Prior to October 24, 1940, the definition of an executive, with respect to the compensation requirement, promulgated by the Administrator of the Wage and Hour Division, provided that in order to qualify for such classification the employee "be compensated for his services at not less than $30.00 * * * for a workweek." 1940 Wage and Hour Manual, pages 421-422, 3 F.R. 2518. Defendant's procedure of translating the $30.00 per week into $130.00 per month was a recognized procedure.

"It is hardly necessary to restate what has always been the practice of the Wage and Hour Division, namely that the $30.00 for a workweek can be translated into equivalent terms for longer periods. Thus the requirement is fulfilled if the worker is paid $130.00 for a month or a comparable amount for any other pay period." (Stein Report) Wage and Hour Manual 1944, pages 691-692.

Effective October 24, 1940, this provision was amended to read " * * * compensated for his services on a salary basis at not less than $30.00 per week * * *." 1944 Wage and Hour Manual, page 670; 5 F.R. 4077.

After October 24, 1940, defendant advised the plaintiffs that they were guaranteed a salary of $30.00 per week, effective October 27, 1940, and the provision for $30.00 per week was again converted into $130.00 per month. This practice of computing the compensation of foremen on an hourly basis with the guaranteed minimum provided by the Regulation was common in the industry. When the question arose as to whether such practice was a proper compliance with the Act, the General Manager of the Automotive Parts and Equipment Manufacturers Association, of which the defendant was a member, made specific inquiry of the Administrator. After some correspondence between the parties an opinion in writing

was rendered by the Administrator's office on November 29, 1940, approving such practice and a copy of the letter[2] was given to the defendant for its guidance.

◼ Concerning the weight to be given to the Administrator's conclusions, the Supreme Court of the United States said in Skidmore et al. v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124.

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

There is ample proof that for all of the periods claimed herein all of the plaintiffs in the Automotive Division as in the Aircraft Division were paid the guaranteed minimum required by the Regulation.

(f) The chief area of conflict in the testimony concerns itself with the amount of manual labor claimed to have been performed by the various plaintiffs. In this regard, the court finds that while the requirements of the Regulation have been clearly met in the case of some of the plaintiffs, it is lacking in others.

◼ The court is of the opinion that Thomas, Block and Anderson during the entire period of their employment in the Automotive Division, and Hall with respect to the period from May 3, 1943, to January 23, 1945, inclusive, were not exempt executive employees because the defendant has failed to sustain the burden of proof that the hours of work of each of these plaintiffs for the periods referred to did not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under their direction.

Thomas was a foreman in charge of a rule-die making department and had four men under his supervision. He was responsible for the making, maintaining and checking of all of the rule-dies and supervised their storing and the keeping of records as to their location. He did do a substantial amount of manual work of the character performed by the others in his department.

Block was the Supervisor of the Pasting Department. Notwithstanding the responsibilities of his position, he, nevertheless, together with five to seven men working under him, operated a machine which laminated sheets of fibreboard and heated

---

2 "U. S. Department of Labor
Wage and Hour Division
Washington

Office of the
Administrator

Nov. 29, 1940

Mr. Frank Rising, General Manager
Automotive Parts and Equipment Manufacturers
800 Michigan Theatre Building
Detroit, Michigan.

Dear Mr. Rising:

This is in further reference to your letter of November 4, 1940, and our reply to you of November 15, 1940. These letters were concerned with the problem of an employee paid according to the number of hours he works (with or without incentive or other bonuses) but guaranteed a payment of not less than $30.00 per week for each work-week in which he performs any work at all.

Further consideration has been given to this question and it is our opinion that such an arrangement would be the equivalent of payment on a salary basis as required by section 541.1(E) of our regulations.

We have also studied the draft paragraph you left with Mr. Stein when you called at his office and we find nothing in it inconsistent with the above interpretation of the regulations.

Perhaps it might be well for you to point out to the members of your Association that failure to pay the guaranteed amount during any workweek in which some work was performed would indicate that the guarantee was not bona fide.

Sincerely yours,
(sgd) Thomas Holland
Acting Administrator"

asphalt, in accordance with specified requirements.

Anderson for sometime prior to January 23, 1939, until November 18, 1942, was supervisor of a department referred to as the Sample Department. This department of the defendant's business was the one which, from blueprints and specifications furnished by the defendant's customers, prepared patterns and also the models of the finished product manufactured by the defendant in quantity. There were two other men in this department who were under his direction. While Anderson's duties required him to visit various departments in the plant, he participated actively in the work which engaged the time of the other two men.

■ The testimony indicates that Thomas, Block and Anderson were in reality "working foremen", and so closely connected with the manual operation of the machines and the men they supervised that they did perform manual labor substantially in excess of 20 percent of the number of hours worked in the workweek by non-exempt employees under their direction.

With regard to Hall for the period from May, 1943, to January, 1945, during which time he was classified as an Assistant Foreman on special assignment to the Maintenance Department, the defendant has failed to show that he did not during this period perform manual work to an extent greater than the maximum permitted for an exempt executive employee classification.

There remains for consideration Stevens and Wilczynski for the entire period of their employment in the Automotive Division, and Hall for the period from October 24, 1940, to May 3, 1943.

■ Stevens for sometime prior to January 23, 1939, and through December 15, 1942, was a Foreman in charge of defendant's Shipping Department. This was an important department having charge of the storing, wrapping and shipping of all finished products, and Stevens regularly directed the work of twenty-five to forty employees including one or two clerks and an assistant foreman. There is little doubt that this plaintiff performed no manual labor except on rare occasions when an emergency arose and that he is clearly an exempt executive employee.

■ Wilczynski, for sometime prior to January 23, 1939, through December 7, 1942, was a Foreman simultaneously in charge of three different departments, namely, Glove Box Assembly, Arm Rest Metal Reinforcement and Arm Rest Shipping. A large amount of material flowed continuously through his departments and he supervised about forty employees per shift. He was required to see that the materials furnished for the installation of parts were as required, and one of his important functions was to watch the schedule of deliveries and determine which order to run first in order properly to satisfy delivery requirements. He had the assistance of a clerk to keep complete records of materials finished and shipped. Although there is some testimony to the effect that he occasionally assisted at the machines, this would appear to have been in the line of his supervisory duties of explaining the operations to employees. It does not seem plausible that this plaintiff would have had the time or the need for performing any considerable amount of manual labor in the operation of the various departments.

■ Hall, from January 23, 1939, until January 30, 1941, was a Foreman in defendant's Forming Department which produced the basic form of the upholstered arm rest used in the rear seats of passenger automobiles. As Foreman in charge of this department during the night shift, he was responsible for the entire operation and functioning of the department, and exercised considerable discretion as to the manner in which the work was to be performed. From January 20, 1941, to May 3, 1943, he was classified as a Foreman in the Riser Department, which produced certain materials upon which were formed and attached upholstery and interior trim of automobile bodies. He was in sole charge of this department and had about forty employees working under his direction. I am satisfied that in both of these departments he did not have the opportunity to and did not in fact perform manual work, except that required to instruct and supervise the employees.

The court finds that Stevens and Wilczynski, for the entire period, and Hall from October 24, 1940, to May 3, 1943, were exempt executive employees.

Subsequent to the close of testimony, defendant amended its answer and pleaded Section 9 of the Portal-to-Portal Act of 1947, as a bar to this action. In 1942 and 1944, the plant of defendant was inspected by a representative of the Wage and Hour Division of the Department of Labor, an examination of defendant's books and records were made, and some employees were interviewed. Defendant contends that since no objection was raised with regard to these plaintiffs, it may now avail itself of Section 9 as a complete defense. Although the defendant may have viewed these investigations as justifying it to rest, they cannot be deemed a "regulation, order, ruling, approval, or interpretation" as contemplated by this section of the Portal-to-Portal Act. The court, however, is satisfied that the defendant acted in good faith and had ample reason to believe that its acts or omissions were not in violation of the Fair Labor Standards Act, and accordingly relieves the defendant of the payment of liquidated damages. Section 11 of Portal-to-Portal Act, supra.

There is no controversy over the hours worked or wages paid which are tabulated and in evidence. A judgment on notice will be entered in accordance with this opinion, the judgment to include a reasonable fee to the attorney for the plaintiffs, to be determined by the court at the time of settlement.