**FOX v. SUN OIL CO.**

Civ. No. 3494.

United States District Court
W. D. Louisiana, Opelousas Division.

Feb. 5, 1953.

946

Robert E. Johnson, New Iberia, La., Welton P. Mouton, Lafayette, La., for plaintiff.

King, Anderson & Swift, Lake Charles, La., for defendant.

DAWKINS, Chief Judge.

Plaintiff's claim is for over-time under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as an employee of defendant, amounting to 1023½ hours during the period January 1, 1950 to and including June 30, 1951. The defenses are, first, that the work performed was such that plaintiff was exempt from the statute, and second, in the alternative, that he was paid for all over-time that was due him. The answer further sets forth that all of his duties were substantially as stated in Article 3 of his complaint, to wit:

"Plaintiff, between the dates of January 1, 1950 and June 30, 1951, both dates inclusive, was employed by defendant in the aforesaid business as a gauger in the New Iberia, Louisiana area; that as such, his principal duties each work day consisted of the orderly and planned movement of crude oil from the storage facilities at the points of production to the contract carriers of the oil for his employer, Sun Oil Company; that in said employment, plaintiff kept records of all deliveries and movements of oil, scheduled carriers to be at the points of production when the oil was ready for shipment was present on every occasion in the area under his supervision, which included production points in Iberia and adjacent parishes, when oil was delivered from producers' storage facilities to the contract carriers, both at the commencement of the delivery operation and at its completion; that plaintiff was responsible for and had the actual work of operating the pumping machinery, transferring the oil from the storage facilities to the carrier; that plaintiff was also responsible for the testing of the oil before acceptance; that plaintiff spent a considerable amount of time of practically every day telephoning the various interested parties and that plaintiff was responsible for and did keep records on all transactions; that the above mentioned duties are in commerce or constitute the production of goods for commerce."

Defendant further averred that plaintiff was employed and paid on a monthly salary basis, beginning at $418 per month, and subsequently increased to $443, and finally to $460 per month; that his hours of work were determined by the plaintiff alone, who kept his own time, and was paid for all the time which he reported, including one and one-half times the hourly rate paid for all in excess of forty hours per week, and is now estopped to claim more than he himself reported.

The first question is as to the nature of plaintiff's employment when tested by the statute invoked.

Section 13(a) of the Fair Labor Standards Act provides:

"The provisions of sections 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator);" 29 U.S.C.A. § 213 (a).

Pursuant to the authority thus conferred by the statute, the Administrator promulgated the following regulations:

"The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a)(1) of the act shall mean any employee:

"(a) Whose primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers; and

"(b) Who customarily and regularly exercises discretion and independent judgment; and

"(c) (1) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or

administrative capacity (as such terms are defined in the regulations in this subpart), or

"(2) Who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or

"(3) Who executes under only general supervision special assignments and tasks; and'

"(d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and

"(e) Who is compensated for his services on a salary or fee basis at a rate of not less than $75 per week (or $200 per month if employed in Puerto Rico or the Virgin Islands) exclusive of board, lodging, or other facilities:

"Provided, That an employee who is compensated on a salary or fee basis at a rate of not less than $100 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of office or nonmanual field work directly related to management policies or general business operations of his employer or his employer's customers, which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section." 29 U.S.C.A. § 541.2.

Defendant concedes that "it is necessary that plaintiff's employment conform to all of the requirements listed under Subsection (a) through (e), except those paragraphs containing disjunctive alternatives * * * ".

Plaintiff's oral testimony supported substantially the allegations of his complaint in Article 3. Simply stated, his title was Assistant Gauger and the entire responsibility for delivering oil to contract carriers in the New Iberia area for shipment to the customers of his employer was entrusted to him, without any direct or immediate supervision, except such as might consist of irregular visits to the field by other representatives. As stated, he kept his own time and informed himself of the comings and goings of barges by which the oil was shipped. He also kept the keys to all outlets from the storage tanks, as well as those leading into them from field tanks of the producers, and whenever any oil was moved into or out of the storage tanks, he did the gauging and kept the records so that his employer might have a correct basis upon which to pay the producers where necessary, as well as to collect from customers to whom the oil was sold and shipped. He also had the duty of checking incoming vessels to see that they were in condition to receive crude oil, to determine when they were properly loaded, and gauge their contents. He spent much time keeping his records, telephoning to his employer in district headquarters, and to others, and in traveling to, remaining with and supervising the loading of vessels. In gauging the tanks from which oil was run, it was necessary for him to climb to a point where the gauging instrument could be used. Occasionally, when necessary, he performed some mechanical duties in connection with keeping the machinery operating, and on one or more occasions did some painting of the tanks and machinery. However, his primary duty was to serve as his employer's sole agent or representative for insuring correct receipts and deliveries of crude oil, which was its principal business in the area involved. His responsibilities were of a very high degree and required absolute integrity in their discharge. It is true that purchases and sales of the oil were made by others, but, insofar as this area was concerned, he was the only person in charge and was depended upon for those expenditures and the figures upon which the employer was to rely in settling with the purchaser against the latter's records at destination.

Giving full effect to plaintiff's own testimony, it is evident that only a very small part of his time was spent in manual labor,

in opening the cocks, closing and locking them, gauging the tanks and barges, and the rest of his time was consumed in traveling to and from the storage tanks in the respective fields and waiting on the scene while the oil flowed into the tanks or the barges.

As stated, his salary began at $418 per month. He received two raises, the first to $443, and the last to $460 per month. In his complaint, he acknowledges receiving for the nine months period, January 1, 1950 to September 30, 1950, $3,848.79, or at the rate of $427 per month in round figures; for the five months period, October 1, 1950 through February 28, 1951, $2,299.30, or $459 per month; and for the four months, March 1, 1951 through June 30, 1951, $1,878.47, or $469 per month.

In the light of these facts and admissions, should the plaintiff's employment be classed as administrative in character or as manual labor?

Of course, his "primary duty" did not consist entirely of the performance of "office * * * work" in its major part, but it did require the expenditure of considerable time in recording in his own home, used as an office, the times, quantities and types of oil received into the storage tanks and loaded into the barges, but the major part of his time was spent in the field in the activities connected with the receipt and shipping out of crude oil which cannot be classed as office work under Subsection (a) above. However, it is necessary to consider the nature of the duties performed as a whole, which involved "nonmanual field work directly related to management policies or general business operations of his employer * * *." He did not direct any "management policy" in receiving and delivering crude oil in the manner stated, but performed operations which became necessary as a result of conditions established by others in making sales contracts or agreements for the acquisition and shipping of his employer's product. In other words, he was in charge of what might be called the gateways for receipt and sale of crude oil, which in a measure related to management or general business operations as provided in the Regulations. He was also required to "cus-tomarily and regularly" use an independent judgment in performing this work as provided by Subsection (b), and to this extent aided and assisted his employer or its managing agents in their work (Subsection (e).

Subparagraphs (2) and (3) are separated by the disjunctive "or". Under the latter, the performance of either may therefore bring the plaintiff under the provisions of the preceding sections.

It is obvious that plaintiff was not performing "work along specialized or technical lines requiring * * * training, experience or knowledge" such as was contemplated by Subparagraph (2). It is true that he had to know how to read and gauge oil tanks and barges, to be able to operate pumps, and to determine whether barges were in condition to receive oil, when they were properly loaded, and which types of oil were to be shipped according to instructions previously received, but these did not involve "specialized" or "technical" training.

With respect to Paragraph (3), Subsection (d), I think it clear that plaintiff did not devote as much as "20 percent of his hours worked in the workweek to activities" which were "not directly and closely related to the performance of work described in paragraphs (a) through (c)". That is, he did not perform by a considerable margin twenty percent manual labor. But his duties were, it is believed, "closely related to management * * * customarily and regularly" performed in gathering and shipping crude oil according to agreements, Subsection (b), and that he did "regularly and directly assist" his employer and its agents "in a bona fide * * * administrative" capacity in determining and dispatching the quantities and types of oil received from producers to the employer's customers.

Nothing was shown as to any board or lodging having been furnished, Subparagraph (e), as part of his compensation, but he drew a monthly salary of at least $100 per week, as shown by his own complaint as above stated. In this situation, it is believed that plaintiff's employment brought him within the terms of the final proviso at the end of the above quoted regulations,

in that he was "on a salary * * * basis at a rate of not less than $100 per week", and that his primary duty consisted of the "performance of * * * nonmanual field work directly related to management policies" and "general business operations of his employer" and "his employer's customers", which included "work requiring the exercise of discretion and independent judgment", and hence met all of the requirements of this final proviso of the regulations. See Explanatory Bulletin, Part 541, 203(b) and 209(c); Marian v. Lockheed Aircraft Corp., D.C., 65 F.Supp. 18; Bernick v. Coddon, D.C., 65 F.Supp. 89; Anderson v. Avery Corp., D.C., 84 F.Supp. 55; Kerew v. Emerson Radio & Phonograph Corp., D.C., 76 F.Supp. 197; Walling Adm'r v. Snyder Min. Co., D.C., 66 F.Supp. 725.

For the reasons stated, it is concluded that complainant did not come under the requirements of the Fair Labor Standards Act.

There should be judgment for the defendant accordingly.